| | |
|---|---|
| **AGRIBUSINESS UNITED DMCC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-15926** |
| **BLUE WATER SHIPPING CO., INC.** | **SECTION: "G"(1)** |

## ORDER

Pending before this Court is Defendant Blue Water Shipping Company, Inc.'s ("Defendant") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] In this litigation, Plaintiffs Agribusiness United DMCC and Agribusiness United North America Corp. (collectively, "Plaintiffs") were charterers/shippers of a vessel and allege that Defendant, who Plaintiffs hired to arrange services for cargo to be loaded onto the vessel, failed to obtain certain necessary certificates and documents, causing a 10-day delay in the vessel's schedule. Accordingly, Plaintiffs brought claims against Defendant for (1) breach of contract; (2) fraudulent misrepresentation; (3) negligence; and (4) gross negligence. In the instant motion, Defendant argues that this Court does not have admiralty jurisdiction over Plaintiffs' claims; Plaintiffs' tort claims are time-barred pursuant to state law; and alternatively, if the Court finds that admiralty jurisdiction exists, all of Plaintiffs' claims are time-barred pursuant to the doctrine of laches. Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will deny the motion and grant Plaintiffs leave to amend the complaint as to their claims for fraudulent misrepresentation, negligence, and gross negligence.

---

[1] Rec. Doc. 7.

# I. Background

### A.   *Factual Background*

In the complaint, Plaintiffs allege that in or about October 2012, Plaintiffs were charterers/shippers of the M.V. FENGLI 11 (the "Vessel").[2] Plaintiffs allege that they hired Defendant as a Freight Forwarder to arrange services for cargo to be loaded onto the Vessel at Savannah, Georgia, and Myrtle Grove, Louisiana.[3] Plaintiffs aver that in connection with those services, Plaintiffs provided Documentary Instructions to the Defendant on or about November 1, 2012, requiring Defendant to arrange for, *inter alia*, issuance of bills of lading, phytosanitary certificates, fumigation certificates, and numerous other documents.[4]

On or about December 5, 2012, Plaintiffs aver, the Vessel arrived at Savannah, Georgia, and began loading operations the following day.[5] However, according to Plaintiffs, Defendant did not arrange for a Federal Grain Inspection Service ("FGIS") inspection of the holds.[6] According to Plaintiffs, Defendant also failed to obtain a phytosanitary certification prior to loading and did not arrange for the FGIS surveyor to be present at commencement of loading.[7]

Plaintiffs aver that loading operations commenced without the needed surveyor.[8] According to Plaintiffs, "when nearly two Vessel holds were already loaded," they learned that no one from USDA/FGIS was present, and, therefore, no official phytosanitary certificate would be

---

[2] Rec. Doc. 1 at 2.

[3] *Id.* at 3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

issued.[9] As a result, Plaintiffs aver, they had to order that the cargo be unloaded, and then reloaded in the presence of the surveyor, and cargo already loaded had to be shifted.[10] According to Plaintiffs, this caused a ten day delay in the Vessel's schedule.[11]

Plaintiffs allege that as a result, Plaintiffs sustained losses in Vessel demurrage, extra costs incurred for failure to timely inspect holds, shortages of cargos, and extension penalties incurred at the second loading port.[12] Plaintiffs aver that on or about June 2, 2014, Plaintiffs demanded Defendant pay $636,234.61 in damages plus interest and costs.[13] According to Plaintiffs, Defendant rejected the claim, and, to date, has failed to pay Plaintiffs any amount for their losses.[14]

## B.    *Procedural Background*

On October 28, 2016, Plaintiffs filed a complaint in this Court.[15] On May 23, 2017, Defendant filed the instant motion to dismiss.[16] On June 27, 2017, Plaintiffs filed an opposition.[17] On July 7, 2017, with leave of Court, Defendant filed a reply.[18]

---

[9] *Id*. at 4.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] Rec. Doc. 1.

[16] Rec. Doc. 7.

[17] Rec. Doc. 14.

[18] Rec. Doc. 17.

<h1 align="center">II. Parties' Arguments</h1>

**A.**     ***Defendant's Motion to Dismiss***

　　1.　　*Defendant argues that all of Plaintiffs' maritime claims should be dismissed pursuant to Rule 12(b)(1) because this Court lacks admiralty jurisdiction*

In the motion to dismiss, Defendant argues that admiralty subject matter jurisdiction is unavailable in this case and dismissal of Plaintiffs' maritime claims is proper pursuant to Rule 12(b)(1).[19] Defendant specifically argues that Plaintiffs' complaint includes four claims against Defendant: breach of contract, fraudulent misrepresentation, negligence, and gross negligence.[20] Defendant asserts that the first claim sounds in contract and the remaining three sound in tort, and because none of them are maritime claims, admiralty jurisdiction is not established.[21]

With respect to Plaintiffs' breach of contract claim, Defendant asserts that a breach of contract claim is subject to Section 1333 jurisdiction if it involves a maritime contract.[22] According to Defendant, a maritime contract is one relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment.[23] In this case, Defendant argues, the contract charged Defendant with assisting Plaintiffs in collecting documents that were all to be issued by various third parties in connection with a vessel's voyage and sending them via courier to an addressee designated by Plaintiffs.[24] Thus, Defendant argues,

---

[19] Rec. Doc. 7-1 at 4.

[20] *Id*. at 5.

[21] *Id*.

[22] *Id*. (citing *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010)).

[23] *Id*. at (citing *Gulf Coast Shell & Aggregate LP*, 623 F.3d at 240).

[24] *Id*. at 6.

no substantial link exists between the tasks covered by the contract and the operation of the ship, its navigation, or its management afloat to give rise to maritime jurisdiction.[25]

Defendant anticipates that Plaintiffs will allege that claims against international freight forwarders are maritime in nature, however, Defendant argues, there are cases that have held the opposite.[26] Moreover, Defendant asserts, it is the nature of the services rendered, not the label given to the transaction, that determines whether maritime jurisdiction exists; and here, Defendant was not acting as an international freight forwarder in the ordinary sense of the term.[27] Moreover, Defendant argues, it was not tasked with arranging for the transportation by common carrier of the shipper's goods, and therefore, Plaintiffs' breach of contract claim does not support admiralty jurisdiction.[28]

With respect to Plaintiffs' tort claims, Defendant argues that neither the location nor connection conditions for admiralty jurisdiction over a tort claim apply in this case.[29] Defendant argues that as to location, none of the alleged tortious activity occurred on navigable waters, nor was any alleged injury caused by a vessel on navigable waters.[30] As to connection, Defendant argues, there was no disruptive impact on maritime commerce.[31] Defendant contends that any delay caused by the absence of USDA inspectors at the loading time was merely in obtaining a

---

[25] *Id.*

[26] *Id.* (citing *Johnson Products Co. v. M/V La Molinera*, 619 F. Supp. 764, 767 (S.D.N.Y. 1985)).

[27] *Id.* at 7.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 7–8.

[31] *Id.* at 8.

phytosanitary certificate, which is not a prerequisite for any maritime commerce.[32] To the extent the certificate was a requirement of Plaintiffs' end buyer, Defendant argues, such had no impact on whether the cargo could in fact be transported from the load port to the discharge port.[33] Likewise, Defendant contends, failing to arrange for USDA attendance at loading, the alleged tortious conduct, does not have a substantial relationship to maritime activity.[34] Moreover, Defendant argues, the shore-side behavior required to issue certificates had no consequence on whether and how the vessel could sail.[35] Accordingly, Defendant argues, there is no maritime jurisdiction over the tort claims alleged in Plaintiffs' complaint.[36]

> 2. *Defendant argues that Plaintiffs' tort claims should be dismissed pursuant to Rule 12(b)(6) because those claims are prescribed pursuant to state law, and alternatively, if this Court finds that admiralty jurisdiction exists, all of Plaintiffs' claims are time-barred pursuant to the doctrine of laches.*

Next, Defendant argues that Plaintiffs' state law tort claims are prescribed pursuant to Louisiana Civil Code Article 3492, which states that delictual, or tort, actions are subject to a one-year liberative prescription.[37] Defendant avers that Plaintiffs' alleged damages occurred on or about December 5, 2012, and Plaintiffs learned about the alleged damages on the same day.[38]

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 9.

[38] *Id.*

Accordingly, Defendant argues, Plaintiffs' tort claims prescribed on or about December 5, 2013, approximately three years before this lawsuit was filed.[39]

In the alternative, Defendant argues, if the Court finds that maritime jurisdiction exists, Plaintiffs' tort claims are time-barred pursuant to the doctrine of laches, which provides that a marine cause of action will be dismissed if there has been inexcusable delay in instituting a suit, which results in prejudice to the defendant.[40] Defendant asserts that in considering whether laches is applicable to a given case, the analogous state statute of limitations and the equitable circumstances of each case must be considered.[41] Defendant argues that the analogous Louisiana prescription period for tort claims is Louisiana Civil Code Article 3492, which provides a one-year period to file suit asserting a tort claim.[42] Since more than one year has passed since the date of injury in this case, Defendant avers, Plaintiffs' claims have prescribed under the analogous Louisiana law, and prejudice and inexcusable delay are therefore presumed.[43]

Accordingly, Defendant asserts, Plaintiffs have the burden to show that their delay was excusable or Defendant was not unduly prejudiced by their inexcusable delay.[44] Relying on a declaration by John Imms, an employee of Defendant at the time of the alleged injury and at present (the "Imms Declaration"), Defendant asserts that Plaintiffs cannot meet this burden because Defendant has been prejudiced in the following ways: (1) after such a substantial period of time has passed, both hard documents and electronic files have been difficult to locate or lost; (2)

---

[39] *Id.* at 10.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 11.

[43] *Id.*

[44] *Id.*

whether relevant witnesses can be identified is unknown; and (3) even if witnesses can be identified, their memory of the events in question has likely faded with time.[45] Defendant further asserts that Plaintiffs have never presented Defendant with any excuse for their delay.[46] Thus, Defendant argues, Plaintiffs' tort claims must also be dismissed as time-barred under the doctrine of laches.[47]

Furthermore, Defendant argues that the analogous state law period to bring a contract claim under Louisiana law is ten years pursuant to Louisiana Civil Code Article 3499.[48] Although Defendant acknowledges that Plaintiffs filed this lawsuit within ten years of the alleged injury, Defendant contends that Plaintiffs' contract claims should nevertheless be dismissed as time-barred under the doctrine of laches.[49] Defendant asserts that it has met its burden to prove that Plaintiffs' excuse for the delay is invalid and that Defendant has been prejudiced by the delay.[50] Specifically, Defendant contends that "Plaintiffs have failed to give any excuse, let alone a valid excuse, why they waited so long to pursue their claims."[51] Additionally, Defendant argues that it "suffered prejudice by the inordinate period of time Plaintiffs waited to bring their claims" for the

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* In Defendant's motion, Defendant states that it has met its burden to prove that Plaintiffs' excuse for the delay is "valid." *Id.* at 11. However, considering the context of Defendant's argument that Plaintiffs' contract claim is time-barred because Plaintiffs have not provided a valid excuse for their delay and Defendant was prejudiced, the Court assumes that the word, "valid," in the aforementioned sentence was a typographical error, and Defendant intended to write, "invalid."

[51] Rec. Doc. 7 at 11.

same reasons set forth regarding the tort claim.[52] Accordingly, Defendant argues, Plaintiffs' contract claim is time-barred under maritime law pursuant to the doctrine of laches.[53]

**B.** **_Plaintiffs' Arguments in Opposition to Defendant's Motion to Dismiss_**

　　1. *Plaintiffs argue that dismissal pursuant to Rule 12(b)(1) is not warranted because the Court has maritime jurisdiction over the contract claim, and the Court may exercise jurisdiction over the remaining claims because they affect Plaintiffs' rights as parties to the maritime action.*

In opposition, Plaintiffs first argue that contracts involving freight forwarders support the existence of maritime jurisdiction.[54] Specifically, Plaintiffs contend that Defendant's argument that there are cases which have found that claims against international freight forwarders are not maritime in nature has been rejected, and to the contrary, federal circuit court jurisprudence instructs that contracts involving freight forwarders support the existence of maritime jurisdiction.[55]

Quoting *Ingersoll Milling Machine Co. v. M/V BODENA*, a case in the Second Circuit, Plaintiffs argue, "The procurement of the proper papers and documents relating to a shipment by sea is an essential and integral part of the shipping process; a contract to obtain those papers, therefore, falls squarely within the admiralty jurisdiction of the federal courts."[56] Plaintiffs additionally cite *BDL International v. Sodetal USA, Inc.*, a case decided by a district court in the District of South Carolina, for the proposition that services may be classified as essential to the

---

[52] *Id.* at 13.

[53] *Id.*

[54] Rec. Doc. 14 at 2 (citing *Ingersoll Milling Mach. Co. v. M/V BODENA*, 829 F.2d 293 (2d Cir. 1987)).

[55] *Id.* (citing Rec. Doc. 7-1 at 6).

[56] *Id.* at 3 (quoting *Ingersoll Milling Mach. Co.*, 829 F.2d at 302–03)

successful shipment of materials to the extent that without such services, a vessel's material could not enter their destination.[57] Finally, citing *Rainly Equipos de Riego S.R.L. v. Pentagon Freight Services., Inc*., a case decided by a district court in the Southern District of Texas, Plaintiffs argue that a "freight forwarder" normally only acts for the shipper in arranging for transportation of the cargo, and here, Defendant was tasked with preparing and issuing various certificates which related directly to the loading and transportation of cargo on a vessel.[58] Accordingly, Plaintiffs argue, Defendant acted as a freight forwarder in preparing and issuing documents that were essential to transportation of cargo on the Vessel, and therefore, the contract at issue involved a maritime service giving rise to admiralty jurisdiction.[59] Accordingly, Plaintiffs argue, their claims should not be dismissed pursuant to Rule 12(b)(1) for lack of admiralty jurisdiction.[60]

In the alternative, Plaintiffs argue that this Court has diversity jurisdiction.[61] Plaintiffs aver that one of the Plaintiffs is domiciled in Georgia, the other is domiciled in the United Arab Emirates, and Defendant is domiciled in Louisiana, and therefore, there is complete diversity.[62] Plaintiffs further assert that the amount in controversy exceeds $75,000, and Defendant has not challenged that assertion.[63] Moreover, Plaintiffs contend, even if the Court were to conclude that

---

[57] *Id*. at 4 (citing *BDL Intl. v. Sodetal USA, Inc*., 377 F.Supp.2d 518, 523 (D.S.C. 2005)).

[58] *Id*. at 5 (citing *Rainly Equipos de Riego S.R.L. v. Pentagon Freight Svs., Inc.*, 979 F.Supp. 1079 (S.D. Tex. 1997)).

[59] *Id*.

[60] *Id*.

[61] *Id*.

[62] *Id*. at 6.

[63] *Id*.

there is not subject matter jurisdiction, the appropriate remedy would be dismissal without prejudice.[64]

Finally, Plaintiffs argue that since admiralty jurisdiction is established by Plaintiffs' contract claim, the Court "may entertain an issue of fraud where it is alleged as affecting the rights of parties to a maritime action."[65]

2. *Plaintiffs argue that dismissal pursuant to Rule 12(b)(6) is not warranted because all of Plaintiffs' claims are contractual in nature and therefore not prescribed.*

Plaintiffs argue that all of their claims are contractual in nature, and therefore, the one-year prescription period that applies to delictual claims does not apply here.[66] Pursuant to Louisiana Civil Code Article 3499, Plaintiffs argue, a personal action based on contract is subject to a liberative prescription of ten years, and therefore, Plaintiffs claims are not prescribed.[67]

With respect to the doctrine of laches under maritime law, Plaintiffs argue that the relevant analogous state law is the 10-year prescription period for contract claims pursuant to Civil Code Article 3499.[68] Plaintiffs further argue that, contrary to Defendant's assertion, it is the "party who pleads laches as a defense [that] must show not only unreasonable delay but also resultant undue prejudice," and Defendant, as the party who pleaded laches, has failed to meet either burden.[69]

As an initial matter, Plaintiffs note that the Imms Declaration offered by Defendant in support of its motion to dismiss pursuant to Rule 12(b)(6) is inappropriate and should not be

---

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at 7.

[68] *Id.*

[69] *Id.* at 8 (quoting *West Wind Africa Line, Ltd. v. Corpus Christi Marine Svs. Co.*, 834 F.2d 1232 (5th Cir. 1988)).

considered because affidavits are typically not considered on a motion to dismiss.[70] In any event, Plaintiffs argue, the Imms Declaration fails to meet Defendant's burden of showing undue prejudice insofar as Imms admits that he received demand letters from Plaintiffs before this lawsuit was filed, putting Defendant on notice in advance of December 26, 2014.[71] Furthermore, Plaintiffs argue that in the declaration, Imms merely contends that documents have been difficult to locate, not that they have been impossible to find, and gives no examples of how many instances of lost documents have occurred.[72] Finally, Plaintiffs argue that Defendant fails to establish that an inordinate amount of time has passed, and Defendant was not prejudiced since it was put on notice of Plaintiffs' claims by 2014 when Plaintiffs demanded that Defendant pay $636,234.61 in damages, plus interest and cost, as a result of the failure of performance alleged in this matter, which Defendant rejected.[73] Therefore, Plaintiffs assert, the defense of laches has not been proven by Defendant, as there was no lengthy delay in alerting Defendant to this claim, and the motion should be denied.[74]

## C. *Defendant's Arguments in Further Support of the Motion to Dismiss*

1.   *Defendant argues that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) because the services rendered pursuant to the contract did not create a substantial link between the contract and the operation of the ship, and therefore, this Court lacks admiralty jurisdiction.*

---

[70] *Id.* (citing *Clemmons v. Georgia-Pacific Corp.*, 2015 WL 9307272, 4 (M.D. La. 2014)).

[71] *Id.*

[72] *Id.* at 8–9.

[73] *Id.* at 9.

[74] *Id.*

In reply, Defendant argues that no direct and substantial link between the contract and the operation of the ship exists insofar as Defendant was not engaged to perform any essential maritime tasks, nor was it appointed as vessel agent for the port call, nor was it requested to review load orders as issued by Plaintiffs to the loading terminal, and there is no evidence to the contrary.[75]

Defendant further argues that the cases cited by Plaintiff, *Ingersoll Milling Machine*, a case in the Second Circuit, and *BDL International*, a case in the District of South Carolina, are not binding on this Court.[76] Furthermore, Defendant argues, both are distinguishable in that, here, Defendant was tasked with assisting Plaintiffs in collecting documents that were all to be issued by various third parties in connection with a vessel's voyage and sending them via courier to an addressee designated by Plaintiffs.[77] Defendant additionally argues, the contract itself must be maritime in nature, and "any resulting claim for demurrage is insufficient to bring the case within the court's maritime jurisdiction."[78]

Defendant argues that of their tort claims, Plaintiffs only addressed fraud in the opposition, and accordingly, Plaintiffs' claims for negligence and gross negligence should be dismissed as unopposed.[79] With regard to the fraud claim, Defendant argues, "there is no evidence that the underlying contract was maritime in nature, undermining Plaintiffs' very abbreviated Opposition."[80]

---

[75] Rec. Doc. 17 at 1–2.

[76] *Id*. at 2.

[77] *Id*.

[78] *Id*. at 3.

[79] *Id*.

[80] *Id*.

With regard to Plaintiffs' alternative basis for jurisdiction pursuant to 28 U.S.C. § 1332, Defendant does not contend that the parties are not diverse or that Plaintiffs' claim does not purport to exceed $75,000.[81] However, Defendant argues that "the Court can and should dismiss the Complaint's claims filed under the Court's maritime jurisdiction under 28 U.S.C. § 1333, leaving only the claims to be resolved under the Court's diversity jurisdiction."[82]

> 2. *Defendant argues that Plaintiffs' claims for fraudulent misrepresentation, negligence, and gross negligence should be dismissed pursuant to Rule 12(b)(6) because those are by definition, tort claims, not contract claims, and are prescribed pursuant to state law.*

Defendant argues that the term "delictual claim" is synonymous with the term "tort claim;" claims sounding in fraudulent misrepresentation, negligence, and gross negligence are delictual/tort claims; and Plaintiffs' contract and delictual/tort claims are not mutually exclusive.[83] Furthermore, Defendant argues, Plaintiffs admit they have asserted both a breach of contract claim and separate tort claims insofar as Plaintiffs divide their arguments in support of maritime jurisdiction into two parts, one under the heading, "a. Contract Claim," and the second under the heading, "b. Tort Claim."[84] Accordingly, Defendant asserts, the one-year prescription period under Louisiana Civil Code Article 3492 applies to Plaintiffs' claims for fraudulent misrepresentation, negligence, and gross negligence; and as more than one year has passed between the incident

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 4–6.

[84] *Id.* at 5.

giving rise to this litigation and the time of its filing, these claims are prescribed and should be dismissed.[85]

> 3. *Defendant argues that if admiralty jurisdiction exists, Plaintiffs' breach of contract claim should be dismissed pursuant to Rule 12(b)(6) because the claim is time-barred pursuant to the doctrine of laches as Defendant has been prejudiced by Plaintiffs' inexcusable delay.*

Finally, with regard to the breach of contract claim, Defendant argues that it has been prejudiced by the inordinate delay in the filing of this lawsuit.[86] Defendant argues specifically that the jurisprudence is clear that "loss of records, destruction of evidence, fading memories, or unavailability of witnesses" may constitute prejudice sufficient to bar a claim under the doctrine of laches, [87] and that courts can and have dismissed claims under the doctrine of laches where, as here, the plaintiffs fail to explain why they delayed in asserting their claims, even when the claims were brought within the forum state's baseline prescription period.[88]

### III. Law

**A.** **Legal Standard on a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed "for lack of subject-matter jurisdiction."[89] "The burden of proof for a Rule 12(b)(1) motion to dismiss

---

[85] *Id.* at 6.

[86] *Id.*

[87] *Id.* (quoting *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988)).

[88] *Id.* (citing *Powell v. Global Marine*, LLC, 671 F. Supp. 2d 830, 839 (E.D. La. 2009)).

[89] Fed. R. Civ. P. 12(b)(1).

is on the party asserting jurisdiction."[90] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[91]

## B.   *Legal Standard on Establishing Admiralty Jurisdiction*

"A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'"[92] "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . .'"[93]

A breach of contract claim falls within the Court's admiralty jurisdiction if it involves a maritime contract.[94] According to the Supreme Court, "A maritime contract is one in which the 'primary objective is to accomplish the transportation of goods by sea . . . .'"[95] In determining whether a contract is maritime, courts look to "the nature and character of the contract" to determine whether it has "reference to maritime service or maritime transactions."[96] Moreover, according to the Fifth Circuit, "A maritime contract is one 'relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime

---

[90] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

[91] *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

[92] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995) (citing U.S. Const., Art. III, § 2).

[93] *Id.* (quoting 28 U.S.C. § 1333(1)).

[94] *See Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010).

[95] *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004).

[96] *Id.* at 23.

employment.'"[97] The Fifth Circuit has further explained:

> In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.[98]

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."[99] To satisfy the "location" requirement, a plaintiff must show that the alleged "tort at issue either 'occurred on navigable water,' or if the injury is suffered on land, that it was 'caused by a vessel on navigable water.'"[100] The "connection" requirement involves a two-pronged analysis: (1) whether the incident, described in general characteristics, has a potentially disruptive impact on maritime commerce; and (2) whether the general character of the alleged tortious conduct giving rise to the incident has a substantial relationship to maritime activity.[101]

Moreover, in *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, the Supreme Court held that it was appropriate to exercise admiralty jurisdiction over a "subsidiary or derivative issue in a litigation clearly maritime," where "necessary to the complete adjustment of rights over which admiralty has independent jurisdiction."[102] To do otherwise, the Supreme Court reasoned, "would require an absolute rule that admiralty is rigorously excluded from all contact with

---

[97] *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) (quoting *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992)).

[98] *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 187 (5th Cir. 2010).

[99] *Jerome Grubart, Inc., v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013).

[100] *Barker*, 713 F.3d at 215 (quoting *Grubart*, 513 U.S. at 534).

[101] *Id.* (citing *Grubart*, 513 U.S. at 534).

[102] 339 U.S. 684, 691–93 (1950).

nonmaritime transactions and from all equitable relief, even though such nonmaritime transactions come into play, and such equitable relief is sought, in the course of admiralty's exercise of its jurisdiction over a matter exclusively maritime."[103] In *Swift & Co. Packers*, the Supreme Court concluded, "We find no restriction upon admiralty by chancery so unrelenting as to bar the grant of any equitable relief even when that relief is subsidiary to issues wholly within admiralty jurisdiction."[104]

## C.      *Legal Standard on a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[105] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[106] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[107] "Factual allegations must be enough to raise a right to relief above the speculative level."[108] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[109]

---

[103] *Id*. at 691.

[104] *Id*. at 691–92.

[105] Fed. R. Civ. P. 12(b)(6).

[106] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[107] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[108] *Twombly*, 550 U.S. at 556.

[109] *Id.* at 570.

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[110] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[111] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[112] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[113] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[114] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[115] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[116] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[117]

---

[110] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[111] *Iqbal*, 556 U.S. at 677–78.

[112] *Id.* at 679.

[113] *Id.* at 678.

[114] *Id.*

[115] *Id.*

[116] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[117] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

### D. The Doctrine of Laches

Pursuant to the doctrine of laches, a claim within a district court's admiralty jurisdiction may be barred if there has been inexcusable delay in instituting a suit which results in prejudice to the defendant.[118] In applying the doctrine of laches, the first step is to identify the state prescription period that is analogous to the claim being asserted in admiralty jurisdiction.[119] "A plaintiff's failure to bring a claim within the time allowed under the analogous state statute of limitations creates a rebuttable presumption of prejudice and inexcusable delay."[120] To rebut this presumption, a plaintiff must show that the delay was excusable and that the defendant suffered no prejudice.[121] If the plaintiff fails to meet their burden, the claim may be time-barred pursuant to the doctrine of laches.[122]

## IV. Analysis

### A. Whether This Court Lacks Admiralty Jurisdiction and Therefore Plaintiffs' Claims Are Subject to Dismissal Pursuant to Rule 12(b)(1)

With respect to Plaintiffs' breach of contract claim, Defendant argues that no substantial link exists between the tasks covered by the contract and the operation of the ship, its navigation, or its management afloat to give rise to maritime jurisdiction. With respect to Plaintiffs' tort claims,

---

[118] *See Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634, 636 (5th Cir. 1985) ("The sole issue before this court is whether the appellants' tort claims were within the district court's admiralty jurisdiction, thus affording the appellants the doctrine of excusable laches."); *see also, e.g., Vega v. The Malula,* 291 F.2d 415, 416 (5th Cir. 1961) (applying the doctrine of laches in finding that a tort claim for libel was not time-barred).

[119] Uisdean R. Vass, *The Admiralty Doctrine of Laches*, 53 LA. L. REV. 495, 517 (1992); *see also Underwriters Ins. Co. v. Offshore Marine Contractors, Inc.*, 442 F. Supp. 2d 325, 332 (E.D. La. 2006) ("In considering whether laches is applicable in a given case, the analogous state statute of limitations and the equitable circumstances of each case must be considered.").

[120] *Underwriters Ins. Co.*, 442 F. Supp. 2d at 332.

[121] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

[122] *Id*. ("Because the pleadings show no excusable reason for [the counterclaimant's] delay, its laches argument must fail.").

Defendant argues that neither the "location" nor "connection" conditions for maritime jurisdiction over a tort claim are satisfied in this case. Therefore, Defendant argues, Plaintiffs' claims filed pursuant to the Court's admiralty jurisdiction should be dismissed pursuant to Rule 12(b)(1). Plaintiffs, in turn, argue that Defendant's role in preparing and issuing documents was a maritime service, and therefore, the contract for those services is a maritime contract giving rise to admiralty jurisdiction. Plaintiffs further argue that this Court may entertain an issue of fraud where it is alleged as affecting the rights of parties to a maritime action. Therefore, Plaintiffs contend, this Court has admiralty jurisdiction over Plaintiffs' tort claims.

In order for a contract to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat.[123] Defendant relies on *Alphamate Commodity GMBH v. CHS Europe SA* in support of its argument that the label of "freight forwarder" ascribed to Defendant in the complaint is insufficient to give rise to maritime jurisdiction over Plaintiffs' breach of contract claim, where the services at issue here were not of the typical nature performed by a freight forwarder.[124] Moreover, Defendant argues, that whether or not Plaintiffs label Defendant as a "freight forwarder," there was not a direct and substantial link between the contract at issue here and the operation of the ship, its navigation, or its management afloat sufficient to give rise to admiralty jurisdiction.

In *Alphamate Commodity GMBH*, the defendant contracted to sell corn to a third party, who allegedly owed money to the plaintiff.[125] The plaintiff sought and obtained an attachment on

---

[123] *Alphamate Commodity GMBH*, 627 F.3d at 187.

[124] Rec. Doc. 7-1 at 6 (citing *Alphamate Commodity GMBH*, 627 F.3d at 187).

[125] *Id*. at 185.

a shipment of corn from the defendant bound for the third party.[126] The defendant contended that they, not the third party, owned the corn, because title transferred upon payment, which had not occurred.[127] The plaintiff did not dispute that the primary subject matter of the contracts between itself and the third party owing it money was the sale of grain.[128] Moreover, the only link between the contracts and the operation of the ship was that the contracts contemplated that the plaintiff would ship the grain via sea transport and included the term "CFR" (Cost and Freight), meaning that the plaintiff was responsible for arranging and paying for transport.[129]

In *Alphamate Commodity GMBH*, citing the Supreme Court case, *Norfolk Southern Ry. Co. v. Kirby*, the Fifth Circuit emphasized, "[a] maritime contract is one in which the 'primary objective is to accomplish the transportation of goods by sea.'"[130] Accordingly, reasoning that the primary purpose of the contracts was the sale of grain, and sea transport was merely "incidental," rather than direct, to accomplishing that purpose, the Fifth Circuit held that the plaintiff in *Alphamate Commodity GMBH* did not present a *prima facie* admiralty claim.[131]

Plaintiffs cite two cases, *Ingersoll Milling Machine. Co. v. M/V BODENA*, a case in the Second Circuit, and *BDL International. v. Sodetal USA, Inc.*, a case in the District of South Carolina, in support of their argument that a "freight forwarding" contract is maritime in nature.[132] However, neither case is binding on this Court. Instead, *New Orleans Stevedoring Co. v. United*

---

[126] *Id.*

[127] *Id.*

[128] *Id.* at 187.

[129] *Id.* at 186.

[130] *Id.* at 187 (citing 543 U.S. 14, 24).

[131] *Id.* at 188.

[132] Rec. Doc. 14 at 3–4.

*States*, a case in the Fifth Circuit, provides analogous authority.[133] There, the Fifth Circuit held that the contracts at issue were maritime contracts, and therefore, the district court had admiralty jurisdiction.[134] In *New Orleans Stevedoring Co.*, the conflict arose out of the alleged breach of two contracts between New Orleans Stevedoring Company and the Department of Defense.[135] One contract provided for "the unloading and loading of cars, barges, or trucks to and from piers, docks, wharves" at New Orleans and the other provided for stevedoring services at New Orleans in which the company agreed "to load and discharge cargoes and in connection therewith . . . [and] perform all duties of a stevedore on any (designated) vessel . . . ."[136] "After considering the nature and subject matter of the contracts [] in question, the district court held that they were both essentially maritime in nature."[137] Finding no error, the Fifth Circuit affirmed.[138]

Although Defendant's reliance on *Alphamate Commodity GMBH* for the applicable legal standard to determine whether a contract is maritime in nature is valid, this case is distinguishable on the facts. Here, sea transport was not merely incidental to accomplishing the purpose of the contract between Plaintiffs and Defendant; rather, the central purpose of the contract, regardless of the "freight forwarding" label, was to facilitate the transportation of goods by sea. In effect, the contract served no other purpose but to acquire the documents necessary to effectuate "commerce . . . on navigable waters," and is therefore a maritime contract.[139]

---

[133] 439 F.2d 89 (5th Cir. 1971).

[134] *Id.* at 92.

[135] *Id*. at 90.

[136] *Id*.

[137] *Id*. at 92.

[138] *Id*.

[139] *Gulf Coast Shell & Aggregate LP*, 623 F.3d at 240 (quoting *J.A.R., Inc.*, 963 F.2d at 98).

Moreover, the contractual duties of Defendant in this case are more similar to those of the defendant in *New Orleans Stevedoring Co*., to the extent that as in *New Orleans Stevedoring Co*., Defendant's contractual duties included various tasks for the preparation of shipper's cargo. Specifically, Plaintiffs allege that they hired Defendant as a freight forwarder to arrange services for cargo to be loaded onto the Vessel.[140] Additionally, Plaintiffs allege that Defendant's contractual responsibilities included securing all necessary inspections, approvals, bills of lading, and certificates for the Plaintiffs' cargo, including a phytosanitary certification.[141] Pursuant to *New Orleans Stevedoring Co*., and contrary to Defendant's argument, the duties of the shipper's agent need not include booking the vessel for transportation of the shipper's goods for the contract to be considered a maritime contract. Moreover, in *New Orleans Stevedoring Co*., the Fifth Circuit made clear that contracts essentially for the preparation of cargo for sea transport may constitute maritime contracts.[142]

Accordingly, Plaintiffs have met their burden of establishing a substantial link between the contract and the operation of the ship in transporting Plaintiffs' goods, such that the contract constitutes a maritime contract. Therefore, this Court has admiralty jurisdiction over Plaintiffs' claim for breach of contract.

Furthermore, the two cases cited by Plaintiffs, *Ingersoll Milling Machine Co. v. M/V BODENA* and *BDL International. v. Sodetal USA, Inc.*, though not binding on this Court, support the Court's conclusion that admiralty jurisdiction exists over Plaintiffs' claim for breach of contract, insofar as both courts in those cases determined that the services rendered, as here, were

---

[140] Rec. Doc. 1 at 3.

[141] *Id*.

[142] 439 F.2d at 89.

essential to the shipment of goods by sea.[143] In contrast, *Johnson Products*, a case in the Southern District of New York, which Defendant cites, though also not binding, is distinguishable.[144] There, the plaintiff argued that the requisite maritime contract was a fraudulent bill of lading which was presented to the plaintiff by the defendant.[145] However, the bill was actually prepared by an entity who was not party to the action, and the defendant merely passed the bill on to the plaintiff.[146] The court recognized that while a bill of lading itself may be a maritime contract, the forwarding of a bill of lading did not in itself create a maritime contract between the plaintiff and the defendant, and therefore, there was no admiralty jurisdiction over the plaintiff's claims.[147] Here, Plaintiffs allege that Defendant, who was a party to the contract at issue, agreed to perform certain services pursuant to that contract, and those services had a direct and substantial link to the transportation of goods by sea. Accordingly, *Johnson Products* is not persuasive that the Court lacks admiralty jurisdiction over Plaintiffs' claim for breach of contract in this case.

Having found that Plaintiffs' breach of contract claim supports admiralty jurisdiction, pursuant to *Swift & Co. Packers*, this Court has admiralty jurisdiction over any subsidiary or derivative issue necessary to the complete adjustment of Plaintiffs' rights. Here, Plaintiffs allege the same set of facts and injuries in support of their claims for fraud, negligence, and gross negligence. In *Swift & Co. Packers*, the Supreme Court held that exercising jurisdiction over the plaintiff's claim for fraud arising in connection with an attachment seeking to effectuate a claim

---

[143] *Ingersoll Milling Mach. Co.*, 829 F.2d 293; *BDL Intl.*, 377 F.Supp.2d 518.

[144] *Johnson Products Co., Inc.*, 619 F. Supp. 764.

[145] *Id.* at 767.

[146] *Id.*

[147] *Id.*

incontestably in admiralty was proper.[148] Likewise, the exercise of jurisdiction over Plaintiffs' tort claims here is proper for the complete adjustment of Plaintiffs' rights.

Thus, this Court has admiralty jurisdiction over all of Plaintiffs' claims, and Defendant's Rule 12(b)(1) motion to dismiss for lack of admiralty jurisdiction is hereby denied.

**B.**      ***Whether Plaintiffs' Claims Are Time-Barred and Therefore Subject to Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim***

Defendant argues that Plaintiffs' tort claims are time-barred under the doctrine of laches because the analogous Louisiana prescriptive period for tort claims pursuant to Louisiana Civil Code Article 3492 is one year, that period has expired, and Plaintiffs cannot demonstrate that Defendant was not unduly prejudiced by their inexcusable delay. Defendant additionally argues that Plaintiffs' breach of contract claim, although subject to a ten-year prescriptive period, is also time-barred pursuant to the doctrine of laches because Plaintiffs' delay in bringing the breach of contract claim was unreasonable.

Plaintiffs argue that all of their claims are contractual in nature, and therefore, the one-year prescription period that applies to delictual claims does not apply here. Rather, Plaintiffs argue, the ten-year prescription period, found at Louisiana Civil Code Article 3499, is the applicable analogous Louisiana prescription period under the doctrine of laches. Furthermore, Plaintiffs argue, Defendant has not met its burden of showing that Plaintiffs' alleged delay was unreasonable and resulted in undue prejudice.

As discussed above, under the doctrine of laches, a claim within a district court's admiralty jurisdiction may be barred if there has been inexcusable delay in instituting a suit and prejudice

---

[148] *Swift & Co. Packers*, 339 U.S. 684, 693 (1950).

resulting therefrom to the defendant.[149] In applying the doctrine of laches, the court first identifies the state statute of limitations that is analogous to the claim being asserted in admiralty jurisdiction.[150] "A plaintiff's failure to bring a claim within the time allowed under the analogous state statute of limitations creates a rebuttable presumption of prejudice and inexcusable delay."[151]

Louisiana Civil Code article 3492 provides in pertinent part that "delictual actions are subject to a liberative prescription of one year." Louisiana Civil Code article 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." Considering these provisions, the Louisiana Supreme Court has recognized that "[a]n action in tort is governed by the prescriptive period of one year while an action on a contract is governed by the ten year prescriptive period for personal actions."[152] Moreover, the Louisiana Supreme Court has recognized that "[i]t is the nature of the duty breached that should determine whether the action is in tort or in contract."[153]

Plaintiffs allege that the injury giving rise to their claims occurred in December 2012, and Plaintiffs filed this lawsuit on October 28, 2016.[154] Both parties agree that the ten-year prescriptive period found at Article 3499 applies to Plaintiffs' breach of contract claim. Therefore, the breach of contract claim was brought within the analogous prescriptive period under Louisiana law. Nevertheless, Defendant contends that Plaintiffs' breach of contract claim should be barred under the doctrine of laches because there has been inexcusable delay in instituting the suit. Defendant

---

[149] *See supra* Section III(D).

[150] Vass, *supra* note 120 at 517; *see also Underwriters Ins. Co.*, 442 F. Supp. 2d at 332.

[151] *Id.*

[152] *See Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993) (citing La. Civ. Code arts. 3492, 3499.

[153] *Id.* (citing *Sciacca v. Polizzi*, 403 So.2d 728, 730 (La. 1981)).

[154] Rec. Doc. 7-1 at 1.

also argues that it was prejudiced by the delay because documents and electronic files are difficult to locate, it is unknown whether witnesses can be identified, and witnesses' memories of the events in question have likely faded with time. However, these arguments are merely conclusory and insufficient to establish that Defendant is prejudiced by the delay such that Plaintiffs' breach of contract claims should be barred by the doctrine of laches.[155] Accordingly, the Court denies Defendant's motion to the extent it argues that Plaintiffs' breach of contract claim is time-barred.

Plaintiffs also contend that the ten-year prescriptive period found at Article 3499 applies to their fraudulent misrepresentation, negligence, and gross negligence claims because, Plaintiffs argue, those claims are contractual in nature. Plaintiffs cite *Landis & James Construction Company v. Gee Gee Corp.*, a Louisiana Fourth Circuit Court of Appeal case, to support this assertion.[156] In *Landis & James Construction Company*, the court considered whether a subcontractor's claim against an architect, with whom the subcontractor had no contractual relationship, was in tort or quasi-contract.[157] Moreover, in that case, the subcontractor did not allege that a contract existed between it and the architect at all, only that the obligation at issue was quasi-contractual, such that

---

[155] To the extent Defendant relies on the Imms Declaration to show prejudice, the Court does not consider the document. It is well established that, in deciding whether to grant or deny a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint." *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013); *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Mabile v. BP, p.l.c.*, No. 11-1783, 2016 WL 5231839, at *16 (E.D. La. Sept. 22, 2016) (Brown, J.). Generally, when considering a motion to dismiss, the Court may only consider the contents of the pleadings and its attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit permits a limited incorporation exception, which allows documents attached to a motion to dismiss to be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). *See also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that it was appropriate for the district court to consider contracts attached to the defendants' motion to dismiss because the contracts were referred to in the complaints and are central to the plaintiffs' claims). Here, the declaration of Lucas Sandmeier is not referenced in Plaintiffs' complaint. Accordingly, the Court cannot consider this document on a motion to dismiss. Therefore, these arguments are best left for summary judgment after the parties have had sufficient time to conduct discovery.

[156] *Landis & James Const. Co. v. Gee Cee Corp.*, No. 95-1927 (La. App. 4 Cir. 2/15/96); 669 So. 2d 1265, *writ denied*, 96-0695 (La. 4/26/96); 672 So. 2d 910.

[157] *Id.* at 1266.

the ten-year prescription period would apply.[158] There, the court held that the subcontractor's economic damages resulted from defective designs by the architect, and that an action for such sounds in tort and is therefore governed by the one year prescription period set forth in Article 3492.[159]

This case is distinguishable from *Landis* because here Plaintiffs bring both a claim for breach of contract and claims that appear to be delictual in nature. Moreover, Plaintiffs fail to plead any facts showing how their fraudulent misrepresentation, negligence, and gross negligence claims are contractual in nature. Although the ten-year prescriptive period found at Article 3499 is a "catch-all" provision applicable to all personal actions unless otherwise provided by legislation, Plaintiffs have not cited any authority to support their assertion that it applies to these claims. Therefore, the one-year prescriptive period found at Article 3492 appears to apply to these claims.

Plaintiffs allege that the injury giving rise to their claims occurred in December 2012. Plaintiffs filed this lawsuit on October 28, 2016, nearly four years later. Accordingly, because Plaintiffs' failed to bring their tort claims within the analogous state statute of limitations, Plaintiffs have the burden of showing that their delay was excusable and that Defendant was not prejudiced.[160] Plaintiffs argue that there was no prejudice to Defendant and any delay was excusable because Defendant was put on notice by June 2014 of Plaintiffs' claims, when Plaintiffs demanded that Defendant pay $636,234.61 in damages, plus interest and costs, as a result of the alleged failure of performance alleged in this matter.[161] However, Plaintiffs neither explain nor

---

[158] *Id.*

[159] *Id.* at 1267.

[160] *Kaiser Aluminum & Chem. Sales*, 677 F.2d at 1057.

[161] Rec. Doc. 14 at 9.

cite case law for the proposition that notice to a defendant of alleged liability for damages ameliorates prejudice resulting from a plaintiff's delay in actually bringing a legal claim, and the Court is aware of no such authority. Even if Plaintiffs are correct that Defendant was put on notice of its alleged liability by June 2014, and that this somehow ameliorates prejudice, more than one year since the date of injury had still elapsed by June 2014. Moreover, Plaintiffs provide no excuse for the delay in bringing their tort claims, and do not explain why Defendant was not prejudiced by the delay between the date of injury and the date of filing, or between the date of injury and the date of purported notice, both of which exceeded the prescription period of one year. Accordingly, Plaintiffs have failed to rebut the presumption that Defendant was prejudiced and Plaintiff's delay was not excusable where Plaintiffs failed to file their tort claims within one year of the date of injury. Thus, Plaintiffs' tort claims appear to be time-barred pursuant to the doctrine of laches.

However, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[162] Short of granting a motion to dismiss, a court may grant Plaintiffs leave to amend the complaint.[163] Accordingly, the Court will grant Plaintiffs leave to amend their complaint to show either how Article 3499 applies to their fraudulent misrepresentation, negligence, and gross negligence claims or how those claims are not time-barred by the doctrine of laches.

## V. Conclusion

For the reasons set forth above, the Court finds that it has admiralty jurisdiction over all claims asserted by Plaintiffs. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied. The Court further finds that Plaintiffs' claim for breach of contract is not time-

---

[162] *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[163] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

barred; and therefore, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied as to this claim. Finally, the Court finds that Plaintiffs' fraudulent misrepresentation, negligence, and gross negligence appear to be time-barred. The Court will grant Plaintiffs leave to amend the complaint as to these claims, if Plaintiffs can do so to establish these claims have not prescribed or are not time-barred by the doctrine of laches.

Accordingly,

**IT IS HEREBY ORDERED** that the "Motion to Dismiss"[164] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their complaint within fourteen days of this Order to cure the deficiencies noted as to their claims for fraudulent misrepresentation, negligence, and gross negligence, if possible. If Plaintiffs are unable to do so, on motion of Defendant, the Court will dismiss those claims.

**NEW ORLEANS, LOUISIANA**, this 26th day of March, 2018.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[164] Rec. Doc. 7.