# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AGRIBUSINESS UNITED DMCC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-15926** |
| **BLUE WATER SHIPPING CO., INC.** | **SECTION: "G"(1)** |

## ORDER

Pending before this Court is Defendant Blue Water Shipping Company, Inc.'s ("Defendant") "Motion for Summary Judgment as to Plaintiffs' Breach of Contract Claim."[1] In this litigation, Plaintiffs Agribusiness United DMCC ("AU Dubai") and Agribusiness United North America Corp. ("AU North America") (collectively, "Plaintiffs"), who were charterers/shippers of a vessel, allege that Defendant, a company Plaintiffs hired to arrange services for cargo to be loaded onto the vessel, failed to obtain certain necessary certificates and documents, causing a 10-day delay in the vessel's schedule.[2] Accordingly, Plaintiffs brought claims against Defendant for (1) breach of contract; (2) fraudulent misrepresentation; (3) negligence; and (4) gross negligence.[3] This Court subsequently dismissed the fraudulent misrepresentation, negligence, and gross negligence claims.[4] In the instant motion, Defendant argues that a contract was never formed between the parties. Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 44.

[2] Rec. Doc. 1.

[3] *Id.*

[4] *See* Rec. Doc. 29.

## I. Background

### A. Factual Background

In the complaint, Plaintiffs allege that in or about October 2012, Plaintiffs were charterers/shippers of the M.V. FENGLI 11 (the "Vessel").[5] Plaintiffs allege that they hired Defendant as a Freight Forwarder to arrange services for cargo to be loaded onto the Vessel at Savannah, Georgia, and Myrtle Grove, Louisiana.[6] Plaintiffs aver that in connection with those services, Plaintiffs provided Documentary Instructions to the Defendant on or about November 1, 2012, requiring Defendant to arrange for, *inter alia*, issuance of bills of lading, phytosanitary certificates, fumigation certificates, and numerous other documents.[7]

On or about December 5, 2012, Plaintiffs aver, the Vessel arrived at Savannah, Georgia, and began loading operations the following day.[8] However, according to Plaintiffs, Defendant did not arrange for a Federal Grain Inspection Service ("FGIS") inspection of the holds.[9] According to Plaintiffs, Defendant also failed to obtain a phytosanitary certification prior to loading and did not arrange for the FGIS surveyor to be present at commencement of loading.[10]

Plaintiffs aver that loading operations commenced without the needed surveyor.[11] According to Plaintiffs, "when nearly two Vessel holds were already loaded," they learned that no one from USDA/FGIS was present, and, therefore, no official phytosanitary certificate would be

---

[5] Rec. Doc. 1 at 2.

[6] *Id*. at 3.

[7] *Id*.

[8] *Id*.

[9] *Id*.

[10] *Id*.

[11] *Id*.

issued.[12] As a result, Plaintiffs aver, they had to order that the cargo be unloaded, and then reloaded in the presence of the surveyor, and cargo already loaded had to be shifted.[13] According to Plaintiffs, this caused a ten day delay in the Vessel's schedule.[14]

Plaintiffs allege that as a result, Plaintiffs sustained losses in Vessel demurrage, extra costs incurred for failure to timely inspect holds, shortages of cargos, and extension penalties incurred at the second loading port.[15] Plaintiffs aver that on or about June 2, 2014, Plaintiffs demanded Defendant pay $636,234.61 in damages plus interest and costs.[16] According to Plaintiffs, Defendant rejected the claim, and, to date, has failed to pay Plaintiffs any amount for their losses.[17]

## B.  *Procedural Background*

On October 28, 2016, Plaintiffs filed a complaint in this Court.[18] On May 23, 2017, Defendant filed a motion to dismiss.[19] On June 27, 2017, Plaintiffs filed an opposition.[20] On July 7, 2017, with leave of Court, Defendant filed a reply.[21] On March 26, 2018, the Court issued an order denying the motion to dismiss and granting Plaintiffs leave to amend their complaint within fourteen days to address deficiencies in regards to their claims for fraudulent misrepresentation,

---

[12] *Id.* at 4.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Rec. Doc. 1.

[19] Rec. Doc. 7.

[20] Rec. Doc. 14.

[21] Rec. Doc. 17.

negligence, and gross negligence.[22] On April 19, 2018, Defendant filed a motion to dismiss the claims for fraudulent misrepresentation, negligence, and gross negligence, as Plaintiffs had still not amended the complaint.[23] On April 24, 2018, the Court granted Defendant's motion and dismissed Plaintiffs claims for fraudulent misrepresentation, negligence, and gross negligence.[24]

On November 6, 2018, Defendant filed the instant motion for summary judgment.[25] On November 27, 2018, Plaintiffs filed an opposition.[26] On December 13, 2018, with leave of Court, Defendant filed a reply.[27]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion for Summary Judgment*

In the motion, Defendant argues that there is no genuine issue of material fact suggesting that there was mutual consent as to the terms of an alleged contract to procure various documents relating to a shipment of grain byproducts between the parties.[28] Further, Defendant argues there is a complete absence of evidence to demonstrate that Defendant should have known it was being asked to perform certain duties and thus, absent a meeting of the minds, Plaintiffs' claim for breach of contract should be dismissed.[29]

---

[22] Rec. Doc. 24.

[23] Rec. Doc. 27.

[24] Rec. Doc. 29.

[25] Rec. Doc. 44.

[26] Rec. Doc. 53.

[27] Rec. Doc. 64-2.

[28] Rec. Doc. 44-1 at 1.

[29] *Id.*

Defendant argues that there was no "explicit direction" requesting that Defendant order the FGIS inspector on Plaintiff's behalf.[30] In support, Defendant relies on the deposition of plaintiff's witness, Mr. El Oufa, wherein he stated that he "assumed" Defendant would order an FGIS inspector "because they are freight forwarders for a long time [sic]," and "[w]e know because when we sent them the documentary instructions, they ask questions about SGS, about the veterinary certificate, and they did not ask anything about the phyto log and the USDA inspectors. So we understood that they have understood that they have to arrange that."[31]

Defendant also argues there was no meeting of the minds that ordering the FGIS inspector was within the scope of Defendant's work.[32] In support of this argument, Defendant relies on the testimony of Plaintiffs' owner, managing director and primary witness, Mr. Abderrahim Abou El Ouafa, who stated in a deposition that Defendant was never explicitly instructed to order the FGIS inspector to attend the loading operation.[33] Defendant argues that in prior dealings with Plaintiffs, when Defendant was hired to obtain phytosanitary certificates, Defendant was not directed to order the FGIS inspector nor did it do so unprompted, such that Plaintiffs could reasonably assume they would do so in this instance.[34] To support this argument, Defendant relies on the testimony of John Imms, Defendant's representative, wherein he stated "if we were not the ship agent, no, nobody from [Defendant] would coordinate any kind of inspections," and wherein he also stated in cases where Defendant was the freight forwarder for Plaintiffs, it had never arranged for an FGIS

---

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.* at 2.

[33] *Id.* at 2–3.

[34] *Id.* at 3.

5

inspector.[35] Defendant claims that based on the testimony of representatives from both sides, it is clear that there was never a meeting of the minds and thus a contract was not formed.[36]

### B.   *Plaintiffs' Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Plaintiffs' argue that Defendant's motion creates an "inherent factual issue…whether [Defendant] was responsible for supervising, coordinating or otherwise advising of the need for an FGIS inspector."[37] Plaintiffs argue that the "self-serving" affidavit of Defendant's own representative "does not address the glaring inconsistency in what [Defendant] did in the prior two shipments, compared to the lack of any notice, question, inquiry or other correspondence on the FGIS inspector in this shipment."[38] Plaintiffs argue that Mr. Imm's statements do not "explain the lack of any communication prior to loading requesting information about the FGIS Inspector."[39] Further, Plaintiffs argue that even if Defendant assumed that others would handle request, its lack of any communication with Plaintiffs raises an issue of fact.[40]

Plaintiffs also argue that Defendant's duty to obtain an FGIS inspector was "implied from what was said," because the task of obtaining a Phytosanitary Certificate necessitates obtaining an FGIS inspector.[41] Plaintiffs allege that Defendant's conduct is impossible to square with the normal operation and expectation for any freight forwarder.[42] Plaintiffs specifically point to two

---

[35] *Id.*

[36] *Id.* at 10.

[37] Rec. Doc. 53 at 5.

[38] *Id.*

[39] *Id.* at 5–6.

[40] *Id.* at 6.

[41] *Id.*

[42] *Id.* at 7–9.

previous shipments, in which, Defendant "coordinated the FGIS inspection after advising Plaintiff that USDA must be present during loading in order to obtain Phytosanitary Certificates."[43] Based on the past conduct of the parties and the general expectation for any freight forwarder, Plaintiffs argue they have minimally raised a disputed issue of material fact as to whether the parties' had a meeting of the minds and the scope of the contractual duties at issue.[44]

C.     *Defendant's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendant argues that Plaintiffs' cannot rely solely on the unsworn declaration of a self-serving witness to create a genuine dispute of material fact.[45] Defendant argues that the plain language of the documentary evidence, and the sworn testimony of witnesses on the record, contradicts the unsworn testimony of Plaintiffs' representative, Mr. El Ouafa, who stated that Defendant had dealt with FGIS inspectors in the past.[46]

Defendant points to past correspondence with Plaintiffs, related to other vessels, where Defendant told Plaintiff "[s]omeone needs to order [FGIS]…[p]lease be sure to coordinate this."[47] Defendant also points to past correspondence between Plaintiffs and a third party, in which the third party agreed to order the FGIS inspector.[48] Defendant claims that these past correspondences makes it clear that there is no factual dispute and thus summary judgment should be granted.[49]

---

[43] *Id.* at 9.

[44] *Id.* at 11.

[45] Rec. Doc. 64-2 at 1–2.

[46] *Id*. at 4.

[47] *Id.* at 8.

[48] *Id.* at 6–7.

[49] *Id.*

7

## III. Legal Standard

*A.    Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[51] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[52] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[53] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[54]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[55] Thereafter, the nonmoving party

---

[50] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[51] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[52] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[53] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[54] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[55] *Celotex*, 477 U.S. at 323.

should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[56] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[57] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[58] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[59] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[60] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[61] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[62]

---

[56] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[57] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[58] *Little*, 37 F.3d at 1075.

[59] *Anderson*, 477 U.S. at 248.

[60] *Little*, 37 F.3d at 1075.

[61] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[62] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

### B. Legal Standard for Formation of a Contract

This Court held in its Order denying Defendant's motion to dismiss that this is a maritime dispute.[63] Therefore, Defendant's alleged liability on the breach of contract claim is determined in accordance with United States General Maritime Law. Courts typically employ federal common law to resolve maritime disputes.[64] When courts interpret maritime contracts, federal admiralty law applies.[65] The Fifth Circuit has found that a contract may be by express agreement, implied by law, or implied by fact.[66] Contracts implied by fact involve a "meeting of the minds" that is inferred from the parties conduct whereas a contract implied by law is a promise that is imputed from a legal duty.[67]

## IV. Analysis

Here, there is no express agreement that Blue Water would order the FGIS inspector to attend the loading operation prior to cargo operations commencing at the first load port in Savannah. Further, there is no legal duty necessary to create a contract implied by law in this case. Therefore, the Court must determine if there was a "meeting of the minds" inferred between the parties.[68]

Defendant argues there was no meeting of the minds regarding Defendant's obligation to order a FGIS inspector because this was not an expectation of the parties' past relationship and

---

[63] Rec. Doc. 24 at 24.

[64] *Albany Ins.Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.1991).

[65] *See Har–Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir.1986).

[66] *See United States v. P/B STCO* 213, 756 F 2d 364, 370-71 (5th Cir 1985).

[67] *Hercules. Inc. v. United States*, 516 U.S. 417 (1996).

[68] *Id.*

Plaintiffs merely "assumed" the Defendant would act without any express authorization.[69] Plaintiffs respond that the coordination of an FGIS inspector was implied alongside Defendant's admitted duty to obtain the corresponding certificate.[70] Further, Plaintiffs specifically point to two previous shipments, in which, Defendant "coordinated the FGIS inspection after advising Plaintiff that USDA must be present during loading in order to obtain Phytosanitary Certificates."[71] In its reply, Defendant contests the veracity of Plaintiffs claim that it "coordinated the FGIS inspection," based on email correspondence showing that coordination was ultimately handled by a third party.[72]

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[73] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[74] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[75]

---

[69] Rec. Doc. 44-1 at 2–3.

[70] Rec. Doc. 53 at 6.

[71] *Id.* at 9.

[72] Rec. Doc. 64-2 at 6–7.

[73] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[74] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[75] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

Here, the Court finds there is a genuine dispute regarding whether Defendant was required to obtain a FGIS inspector based on general practice, the past relationship and practice of the parties, and correspondence between the parties. While, Plaintiffs rely, in part, on the declaration of their own executive,[76] the Court will refrain from making a credibility determination at this time or weighing this evidence against the conflicting declaration presented by Defendant's representative.[77] Plaintiffs' witness declares, under penalty of perjury, that for two previous shipments, Defendant "coordinated the FGIS inspection after advising Plaintiff that USDA must be present during loading in order to obtain Phytosanitary Certificates."[78] Taken as true, this calls into question the obligation of the parties in this case. Based on this conflicting evidence, the parties' expectation is a question of fact that will be decided after a trial on the merits, not in the instant motion for summary judgment.

## V. Conclusion

For the reasons set forth above, the Court finds that there is a dispute of material fact and will thus deny Defendant's motion for summary judgment.

Accordingly,

---

[76] Rec. Doc. 53-1.

[77] *See Little*, 37 F.3d at 1075.

[78] *Id.* at 9.

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment as to Plaintiffs' Breach of Contract Claim"[79] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 17th day of December, 2018.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[79] Rec. Doc. 44.